JOHN P. GRAHAM and YVONNE M. GRAHAM, on Behalf of Themselves and the Other Shareholders of ALLIS-CHALMERS MANUFACTURING COMPANY Who May be Entitled to Intervene Herein, Plaintiffs,

*vs.*

ALLIS-CHALMERS MANUFACTURING COMPANY, and FRED BOHEN, W. C. BUCHANAN, W. E. BUCHANAN, HUGH M. COMER, JAMES D. CUNNINGHAM, D. A. FORWARD, JOEL HUNTER, ERNEST MAHLER, B. S. OBERLINK, LOUIS QUARLES, W. G. SCHOLL, J. L. SINGLETON, R. S. STEVENSON, HOWARD J. TOBIN, L. W. LONG, FRANK M. NOLAN, DAVID W. WEBB and J. W. McMULLEN, Defendants,

*New Castle, June 8, 1962.*

*H. James Conaway, Jr.,* of Morford, Young & Conaway, Wilmington, and *Harry Norman Ball* and *Marvin Katz,* Philadelphia, Pa., for plaintiffs.

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, for corporate defendant.

*George Tyler Coulson,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and *Charles S. Quarles,* of Quarles, Herriott & Clemons, Milwaukee, Wis., for appearing individual defendants.

MARVEL, Vice Chancellor: Plaintiffs, who are stockholders of Allis-Chalmers Manufacturing Company, charge in their complaint that the individual defendants in their capacity as directors and officers of the defendant corporation "* * have violated the fiduciary duty which they owe, individually and as a group, to the Company and its shareholders by engaging in, conspiring with each other and with third parties to engage in and by authorizing the officers, agents and employees of the Company and by permitting, condoning, acquiescing in, and failing to prevent officers, employees and agents of the Company from engaging in a course of conduct of the Company's business affairs, which course of conduct was in blatant and deliberate violation of the anti-trust laws of the United States."

The complaint then goes on to name other electrical equipment manufacturers with whom the corporate defendant was allegedly caused to combine and conspire "* * * for the purpose of fixing and maintaining prices, terms and conditions for the sale of the various products of the Company * * *", including a number of types of electric transformers, condensers, power switchgear assemblies, circuit breakers, and other types of power equipment, it being charged that by the use of rigged bids in the form of agreements on bidding and refraining from bidding, and the like, that prices of Allis-Chalmers' products were illegally manipulated over a period running from approximately May 1959 through at least June 1960. Plaintiffs contend that such alleged price fixing caused not only direct loss and damage to purchasers of products of Allis-Chalmers but also indirectly injured the stockholders of Allis-Chalmers by reason of corrective government action taken under the terms of the anti-trust laws of the United States for the purpose of rectifying the wrongs complained of.

This latter type of claimed injury for which relief is here sought is alleged to arise in the first instance as a result of the imposition of fines and penalties on the corporate defendant upon the entry of corporate as well as individual pleas of guilty to anti-trust indictments filed in the District Court of the United States for the Eastern District of Pennsylvania. A secondary but potentially much greater type of injury is alleged to have been caused the corporate defendant as a result of its being subjected to suits based on provisions of the anti-trust

laws of the United States brought by purchasers claiming to have been injured by the price fixing here complained of. Finally, it is claimed that the improper actions of the individual defendants of which complaint is made have caused general and irreparable damage to the business reputation and good will of their corporation.

The damages claimed are sought to be derivatively recovered for the corporation from the corporate directors on the grounds that: "The Directors of the Company knew or, in the exercise of reasonable diligence, should have known of the specified course of conduct and the damage of great magnitude which that course of conduct was causing the Company and its shareholders, but the Directors failed to exercise proper supervision over the officers, agents and employees of the Company who were carrying out that course of conduct, condoned, acquiesced in and participated in the specified course of conduct and were guilty of either negligence or bad faith in their conduct of the business affairs of the Company." And while several non-director officials are named in the complaint, plaintiffs' claims for relief were tried and argued as a matter of director liability.

Additional claims for recovery of allegedly excessive amounts of compensation paid to corporate executives are also asserted in the complaint, but no proof of the impropriety of such payments having been adduced at trial, the matter for decision after final hearing is plaintiffs' claim for recovery of injuries suffered and to be suffered by the corporate defendant as a result of its involvement in violations of the anti-trust laws of the United States. No testimony was taken, however, on the quantum of such alleged damages, the scope of the trial having been confined in its initial phase to a receiving of evidence on the issue of alleged director liability for the damages claimed.

Allis-Chalmers is a large manufacturer of heavy equipment and is the maker of the most varied and diverse power equipment in the world. It employs over thirty thousand persons and operates sixteen plants in the United States, one in Canada, and seven overseas. It has one hundred and twenty sales offices in the United States and Canada, twenty-five such offices abroad and is represented by some five thousand dealers and distributors throughout the world. During the years 1955 through 1959 the dollar volume of Allis-Chalmers

sales ranged between a low of $531,000,000 and a high of $548,000,000 annum.

The success or failure of this vast operation is the responsibility of a board of fourteen directors, four of whom are also corporate officers. These directors hold meetings once a month at which previously prepared sheets containing summaries such as sales data, the booking of orders, and the flow of cash, are furnished to the attending directors. Over the course of the several hours normally devoted to meetings, directors are encouraged to participate actively in an evaluation of the current business situation and in the formulation of policy decisions on the present and future course of their corporation.

The operating organization of Allis-Chalmers is divided into two basic parts, namely a Tractor Group and an Industries Group. The latter group in turn is subdivided into a number of divisions, including the Power Equipment Division, which manufactures the devices concerning sales of which anti-trust indictments were handed up by a federal grand jury in Philadelphia during the year 1960, and about which collusive sales this suit is concerned. This division, which at the time of the actions complained of was headed by J. W. McMullen, vice president and general manager, is made up of ten departments, each of which in turn is headed by a manager. During the year 1961 some seven thousand persons were employed in the entire Power Equipment Division, the vast majority of whose products were marketed during the period complained of at published prices. It seems clear from the evidence that while lesser officials were generally responsible for getting up such price lists, prices were fixed with the purpose in mind of having them more or less conform with those current in the trade inasmuch as it was established company policy that any flaunting of price leadership in the field in question would lead to chaos and possible violations of laws designed to militate against price cutting. And no doubt the director Singleton, senior vice president and head of the Industries Group, to whom was delegated the responsibility of supervising such group, in implementing such policy made it clear to his staff as well as representatives of Allis-Chalmers' business competitors that it was the firm policy of his company that ruthless price cutting should be avoided. The pricing of more

complex devices, often made to exacting specifications, however, was often taken further up the chain of command, at times being a matter to be finally fixed by Mr. McMullen, the divisional general manager. Finally, while an annual budget for the Power Equipment Division, in which profit goals were fixed, was prepared by Mr. McMullen and his assistants for periodic submission to the board of directors, the board did not, allegedly because of the complexity and diversity of the corporation's products and the burden of more general and theoretical responsibilities, concern itself with the pricing of specific items although it did give consideration to the general subject of price levels.

Against this complex business background plaintiffs first argue that because of the very nature of the plotting charged in the indictments the defendant directors must necessarily have contemporaneously known of the misconduct of those employees of Allis-Chalmers named in eight true bills of indictment found by a federal grand jury sitting in Philadelphia in 1959 and 1960, or alternatively that if such defendants did not actually know of such illegal activities, that they knew or should have known of facts which constructively put them on notice of such. In either event, it is plaintiffs' position that the director defendants are legally responsible for the consequences of the misconduct charged by the federal grand jury.

The short answer to plaintiffs' first contention is that the evidence adduced at trial does not support it. Except for three directors who were unable to be in Court, the members of the board took the stand and were examined thoroughly on what, if anything, they knew about the price-fixing activities of certain subordinate employees of the company charged in the grand jury indictments. Without exception they denied unequivocally having any knowledge of such activities until rumors of such began to circulate from Philadelphia late in 1959. When there could be no doubt but that certain Allis-Chalmers employees had violated the anti-trust laws, such persons were directed to cooperate with the grand jury and to tell the whole truth. Thereafter, a corporate policy statement, dated February 8, 1960, was adopted in which precise instructions were given as to strict observance by all employees of the anti-trust laws, and a program of education in the field was announced.

Having conducted extensive pre-trial discovery, plaintiffs were quite aware that the corporate directors, if and when called to the stand, would deny having any knowledge of price-fixing of the type charged in the indictments handed up prior to the investigation which preceded such indictments. Notwithstanding this anticipated defense, plaintiffs did not either by deposition or otherwise develop any evidence designed to controvert the unequivocal denials made in open Court by those here charged. Admittedly, Judge Ganey, sitting in the United States District Court for the Eastern District of Pennsylvania at the time of imposition of sentences on some forty-eight individual defendants and thirty-two corporations charged with anti-trust violations, including Allis-Chalmers and certain of its employees, while pointing out that probative evidence had not been uncovered sufficient to secure a conviction of those in the highest echelons, implied that the offenses brought to light in the indictments could not have been unknown to top corporate executives. This comment made at the conclusion of an extensive probe into a devious and clandestine operation cannot, of course, in itself be used to hold the directors liable. Had there been evidence of actual knowledge of anti-trust law violations on the part of all or any of the corporate directors, obviously such would have been presented to the grand jury.

The question remaining to be answered, however, is, have the directors of Allis-Chalmers become obligated to account for any loss caused by the price-fixing here complained of on the theory that they allegedly should and could have gained knowledge of the activities of certain company subordinates in the field of illegal price fixing and put a stop to them before being compelled to do so by the grand jury findings?

Plaintiffs contend first of all that the fact that the Federal Trade Commission in 1937 caused orders to be filed directing Allis-Chalmers and others to cease and desist from alleged price fixing in the sale of condensers and turbine generators, action claimed to have been engaged in since 1933, in itself put the board on notice of the future possibility of illegal price-fixing. However, the filing of such order was not contested by Allis-Chalmers and the allegations therein were consented to "* * * solely for the purpose of disposing of this proceed-

ing. * * *" Furthermore, such decrees, which are not by their very nature intrinsically evidenciary and do not constitute admissions, were entered at a time when none of the Allis-Chalmers directors here charged held a position of responsibility with the company. Mr. Stevenson, the president, as well as Mr. Scholl and Mr. Singleton, who alone among the directors called to testify learned of the 1937 decrees prior to the disclosures made by the 1959–1960 Philadelphia grand jury, satisfied themselves at the time that the charges therein made were actually not supportable primarily because of the fact that Allis-Chalmers manufactured condensers and generators differing in design from those of its competitors. Finally, the gravamen of the 1937 charges was that uniform price had been agreed on by several manufacturers, including Allis-Chalmers. The 1960 indictments on the other hand charged Allis-Chalmers and others with parcelling out or allotting "successful" bids among themselves. In other words, the formalistic 1937 Federal Trade Commerce decrees were not directed against the practices condemned in the 1960 indictments but against an entirely different type of anti-trust offense. The acts therein charged in 1937 are obviously too remote, and actual or imputed knowledge of them cannot create director liability in the case at bar.

Plaintiffs go on to argue that in any event as was stated in the case of *Briggs v. Spaulding*, 141 *U.S.* 132, 11 *S.Ct.* 924, 35 *L.Ed.* 662 (a case in which national bank directors in a five to four decision were actually absolved of liability for frauds perpetrated by the bank president), directors may not safely hold office as mere figure heads and may not after gross inattention to duty plead ignorance as a defense. Other cases are also cited by plaintiffs in which bank directors, particularly directors of national banks, have been held, because of the nature of banking, to a higher degree of care and surveillance as to management matters, including personnel, than that required of a director of a corporation doing business in less sensitive areas. Nor does the decision in *Lutz v. Boas*, 39 *Del.Ch.* 585, 171 *A.2d* 381, a case in which the evidence established that certain directors in effect gave little or no attention to the very purpose for which their corporation was created, namely the purchase and sale of securities, control here, where the evidence establishes that corporate directors in fact paid close attention to the overall operation of a large corporation engaged

in the manufacture and sale of diverse equipment throughout this continent and Europe.

In summary, the essence of what I can draw from the cases dealing with the degree of care required of corporate directors in the selection and supervision of employees is that each case of alleged negligence must be considered on its own facts, giving regard to the nature of the business, its size, the extent, method and reasonableness of delegation of excutive authority, and the existence or non-existence of zeal and honesty of purpose in the directors' performance of their duties. Significantly, § 141(f) of the *Delaware Corporation Law,* no doubt in recognition of the size and diversity of purpose of many corporations, has for almost twenty years provided that a director who relies in good faith on "* * * books of account or reports made to the corporation by any of its officials * * *", as well as "* * * upon other records of the corporation", should be "fully protected." And, while there is no doubt, despite the terms of the above statute, but that corporate directors, particularly of a small corporation, may cause themselves to become personally liable when they foolishly or recklessly repose confidence in an untrustworthy officer or agent and in effect turn away when corporate corruption could be readily spotted and eliminated, such principle is hardly applicable to a situation in which directors of a large corporation, whose operation is hedged about with numerous and sometimes conflicting federal and state controls, had no reason to believe that minor officials in the lower echelons of an industrial empire had become involved in violations of the federal anti-trust laws.

While the law clearly does not now require that directors in every instance establish an espionage system in order to protect themselves generally from the possibility of becoming liable for the misconduct of corporate employees, the degree of care taken in any specific case must, as noted above, depend upon the surrounding facts and circumstances. In other words, wrong doing by employees is not required to be anticipated as a general proposition, and it is only where the facts and circumstances of an employee's wrongdoing clearly throw the onus for the ensuing results on inattentive or supine directors that the law shoulders them with the responsibility here sought to be imposed. The diverse nature of the manifold products manufactured

by Allis-Chalmers, its very size, the nature of its operating organization, and the uncontroverted evidence of directorial attention to the affairs of the corporation, as well as their demeanor on the stand, establish a case of non-liability on the part of the individual director defendants for any damages flowing from the price fixing activities complained of.

On notice, an order may be presented dismissing the complaint.